IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-206-D

MICHAEL WAYNE PAIR,               )
                                  )
            Plaintiff,            )
                                  )
        v.                        )        **MEMORANDUM &**
                                  )        **RECOMMENDATION**
NANCY A. BERRYHILL,[1]            )
Acting Commissioner of Social     )
Security,                         )
                                  )
            Defendant.            )


This matter is before the court on the parties' cross motions for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Michael

Wayne Pair ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of the denial of his application for Disability Insurance Benefits

("DIB"). The time for filing responsive briefs has expired, and the pending motions

are ripe for adjudication. Having carefully reviewed the administrative record and

the motions and memoranda submitted by the parties, the undersigned recommends

that Plaintiff's Motion for Judgment on the Pleadings [DE #17] be denied,

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as
Acting Commissioner of Social Security as a defendant to this action. Nancy A.
Berryhill is now the Acting Commissioner of Social Security and therefore is
substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

Defendant's Motion for Judgment on the Pleadings [DE #19] be granted, and the Commissioner's decision be upheld.

### STATEMENT OF THE CASE

Plaintiff protectively applied for a period of disability and DIB on November 13, 2012, with an alleged onset date of June 22, 2012. (R. 108, 157, 170.) The applications were denied initially and upon reconsideration, and a request for hearing was filed. (R. 108, 168, 170, 192, 196–97, 205.) On October 30, 2014, a video hearing was held before Administrative Law Judge ("ALJ") Richard Perlowski, who issued an unfavorable ruling on January 22, 2015. (R. 108, 130.) The Appeals Council denied Plaintiff's request for review on June 6, 2016. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

### DISCUSSION

I. **Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to

re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

III.    ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since June 22, 2012, the alleged onset date. (R. 110.) Next, the ALJ determined Plaintiff had the following severe impairments: "degenerative joint disease, glenoid labrum detachment, and partial thickness rotator cuff tear of right shoulder; depression; and anxiety." (*Id.*) The ALJ found several non-severe impairments based on previous medical conditions, including hypercholesterolemia, abscess secondary to MRSA, androgen deficiency, GERD, and bilateral compressive neuropathy of the median nerve in the carpal tunnel of both wrists. (R. 111.) The ALJ also labeled as non-severe Plaintiff's past alcohol abuse and possible opiate and benzodiazepine dependence. (*Id.*)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 111–15.) The ALJ analyzed Listings 1.02, 12.04, and 12.06. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he is unable to perform constant pushing, pulling, and reaching with the dominant (right) upper extremity. He is unable to reach overhead with the right upper extremity and is unable to climb ladders. The claimant would be further limited to the performance of simple, routine, repetitive tasks and would need to avoid production work and similar fast-paced work with deadlines and quotas.

He would also be limited to only occasional interaction with others, such as the public, co-workers, and supervisors.

(R. 115.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms "not entirely credible." (R. 117, 125–26.) At step four, the ALJ concluded Plaintiff was not able to perform his past relevant work as a small engine mechanic or an automobile mechanic helper. (R. 128.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 129.) Specifically, the ALJ found Plaintiff capable of performing the following jobs: housekeeper, merchandise marker, and photo copy machine operator. (R. 129–30.)

## IV.    Plaintiff's Arguments

Plaintiff contends the ALJ erred by (1) improperly weighing the opinion of various doctors and psychologists, (2) not finding that he met the criteria for Listing 12.04, and (3) improperly finding that Plaintiff's RFC enables him to perform work at the "light" exertional level. The ALJ's explanation and reasoning regarding each of Plaintiff's arguments is thorough and supported by substantial evidence, and therefore, the undersigned recommends that the Commissioner's decision be upheld.

### A.    Weight Assigned to Medical Opinions

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL

374183, at *3 (July 2, 1996).[2] An ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R § 404.1527(b)–(c). Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

A treating source is a "physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502 (effective June 13, 2011 to Mar. 26, 2017). Controlling weight will be given to "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012, to Mar. 26, 2017); *Craig,* 76 F.3d at 590.

---

[2] This ruling was rescinded on March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15263 (Mar. 27, 2017).

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to give the opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist in the field in which the opinion is rendered; and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(2)–(6) (effective Aug. 24, 2012, to Mar. 26, 2017); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "The ALJ is not required to discuss all of these factors." *Ware v. Astrue,* No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) and *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)). "However, the ALJ must give 'good reasons' for the weight assigned to a treating source's opinion." *Ware*, 2012 WL 6645000, at *2 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

Here, Plaintiff contends that the ALJ improperly weighed (1) the medical opinion of his treating psychiatrist, Dr. Mark Moffett; (2) the opinion of state psychological consultative examiner Dr. Edmund Burnett; and (3) the opinion of state psychological consultative examiner Dr. Jerome Albert. (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #18] at 9–11.) The ALJ's assignment of weight to these evidentiary sources is supported by substantial evidence and adequately explained.

Treatment notes in the record indicate that Dr. Moffett, a psychiatrist, treated Plaintiff from December 2013 through September 2014. (R. 567–69, 641–58.) On September 18, 2014, Dr. Moffett completed a Psychiatric Review Technique form in which he opined, among other things, that Plaintiff (1) suffered marked restriction in daily living activities, maintaining social functioning, and maintaining concentration, persistence, or pace; (2) had suffered three extended episodes of decompensation; and (3) suffered from a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. (R. 659–71.) As the ALJ noted, these findings were indicated solely by checking boxes on a Social Security Administration form and do not contain any additional narrative analysis, discussion, or elaboration by Dr. Moffett. (R. 114, 659–71.) The ALJ identified Dr. Moffett as a treating medical source, but assigned minimal weight to his opinions in the September 2014 form. (R. 114.)

Plaintiff contends that the ALJ erred by failing to assign controlling weight to Dr. Moffett's opinions contained in the September 2014 form. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 10–11.) Specifically, Plaintiff contends that Dr. Moffett's opinions are consistent with the medical record and with Plaintiff's "credible" testimony. (*Id.*)

The ALJ explained at length his reasons for not assigning controlling weight to Dr. Moffett's opinions in the September 2014 form. (R. 114.) The ALJ explained that (1) the opinions in the 2014 form are not supported by the treatment notes in the record; (2) there is no evidence in the record indicating that Plaintiff suffered "*any*

episodes of decompensation as defined in listing 12.00.C.4, much less *three* such episodes"; (3) Dr. Moffett did not explain why he checked certain boxes indicating more severe functional limitations than his treatment notes indicate; and (4) no other evidence in the record supports the opinions in the September 2014 form. (*Id.*)

Having reviewed the record, each reason listed above is supported by substantial evidence in the record. While the ALJ did not address each factor identified in 20 C.F.R. § 404.1527(c)(2)–(6), he did not have to. *See Ware*, 2012 WL 6645000, at *2. The ALJ was only required to provide good reasons for not assigning controlling weight to Dr. Moffett's opinions—reasons sufficient enough to enable meaningful judicial review. *See id.* Here, the reasons given are clear, logical, and supported by the record. Moreover, Plaintiff's argument that the opinions in the September 2014 form are consistent with Plaintiff's testimony is unpersuasive for two reasons: (1) an ALJ is only required to explain how he resolves material inconsistencies in the record, SSR 96–8p, 1996 WL 374184, at *7, and (2) judicial review is limited to determining whether the ALJ considered all the relevant evidence and sufficiently explained the weight accorded to the evidence, *Sterling Smokeless Coal Co.*, 131 F.3d at 439–40. That evidence in the record supports a finding of disability is not sufficient to justify reversal when there is substantial evidence to the contrary. *See Craig*, 76 F.3d at 589 (noting that the substantial evidence standard of review requires deference to the Commissioner "[w]here conflicting evidence allows reasonable minds to differ" (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Here, the ALJ sufficiently explained why he did not assign controlling weight

to the opinions of Dr. Moffett contained in the September 2014 Psychiatric Review Technique form and those reasons are supported by substantial evidence in the record.

Plaintiff next contends that the ALJ erred by assigning minimal weight to state consultative examiner Dr. Jerome Albert's opinions that Plaintiff "may have some difficulty sustaining attention to perform routine repetitive tasks" and "may [have] some difficulty . . . tolerating the stress and pressures associated with day-to-day work activities." (Pl.'s Mem. Supp. Mot. J. Pldgs. at 11; R. 476.) Plaintiff argues that the ALJ should have assigned more weight to these opinions because Dr. Albert was "chosen by Social Security Disability to evaluate plaintiff" and was "highly qualified" to evaluate Plaintiff's impairments. (Pl.'s Mem. Supp. Mot. J. Pldgs at 11.) The ALJ explained that he assigned less weight to these opinions because they were speculative. That is an acceptable reason for discounting the opinion. Moreover, the ALJ addressed these opinions by making related adjustments in the RFC. (R. 121.) The ALJ adequately explained the weight assigned to Dr. Albert's various opinions and his findings in this regard are supported by substantial evidence.

Plaintiff similarly contends that the ALJ erred by assigning minimal weight to state consultative examiner Dr. Edmund Burnett's opinion that Plaintiff "appears mildly to moderately impaired in terms of his coping skills and would have some difficulty dealing with on-the-job stress." (Pl.'s Mem. Supp. Mot. J. Pldgs at 11; R. 496.) Here, Plaintiff argues just as he did regarding Dr. Albert: that the ALJ erred because Dr. Burnett was selected by Social Security to conduct an examination and

was "highly qualified" to do so. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 11.) The ALJ explained that he assigned less weight to Dr. Burnett's opinions because they were speculative. Nevertheless, the ALJ addressed his opinions by making related adjustments in the RFC. (R. 122.) Accordingly, this assignment of error is without merit.

### B.  Listing 12.04 (Affective Disorders)

Plaintiff further contends that the ALJ erred by finding that he did not meet the criteria for Listing 12.04 (Affective Disorders). For the reasons discussed below, the undersigned disagrees and finds that substantial evidence supports the ALJ's findings regarding Listing 12.04.

A "severe" impairment within the meaning of the regulations is one that "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities."[3] 20 C.F.R. § 404.1520(c). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985); *see also*

---

[3] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986) (citing 20 C.F.R. § 416.921(b). For example, work activities might include walking, standing, sitting, lifting, pushing, pulling, and reaching; the capacity to see, hear and speak; and understanding, carrying out, and remembering simple instructions. *Id.* The definition and explanation of "basic work activities" for DIB claims now appears at 20 C.F.R. § 404.1522(b) (effective Mar. 27, 2017).

*Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir. 1984). The claimant has the burden of demonstrating the severity of his impairments. *Pass*, 65 F.3d at 1203.

At step two of the sequential evaluation process, the ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1523. So long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. *Id.*; *see also* SSR 96–8p, 1996 WL 374184, at *5 (explaining that the existence of one or more severe impairments requires the ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

In determining whether a listing is met or equaled, an ALJ must consider all evidence in the case record about the claimant's impairments and their effects on the claimant. 20 C.F.R. § 404.1526(c) (effective June 13, 2011, to March 26, 2017).[4] Where a claimant has a severe impairment and the record contains evidence that symptoms related to the impairment "correspond to some or all of the requirements of [a listing]," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the

---

[4] A new version of this regulation went into effect March 27, 2017, for claims filed on or after that date. The text of subsection (c) is the same in both versions of the regulation.

claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue*, No. 5:11-CV-409-D, 2012 WL 4321390, at *3 (E.D.N.C. Sept. 20, 2012) (quoting *Johnson v. Astrue*, No. 5:08-CV-515-FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009)). An ALJ's failure to compare a claimant's symptoms to the relevant listings or to explain, other than in a summary or conclusory fashion, why the claimant's impairments do not meet or equal a listing "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citing *Cook*, 783 F.2d at 1173).

Listing 12.04 (Affective Disorders)[5] is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (effective Jan. 2, 2015 to May 17, 2015). To meet Listing 12.04, a claimant must satisfy the criteria set forth in paragraphs A and B of the listing, or the criteria in paragraph C. *Id.*

---

[5] The listing has been updated since the date of the ALJ's decision. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.00, 12.04 (effective Mar. 27, 2017, through Jan. 17, 2022); 82 Fed. Reg. 5872 (Jan. 17, 2017); 81 Fed. Reg. 66161, 66167 (Sept. 26, 2016); *see generally* 81 Fed. Reg. 66138 (Sept. 26, 2016) (introductory statement regarding updates to all Listings). The undersigned reviews the ALJ's decision based on the version of Listing 12.04 that was in effect at the time of the ALJ's decision. *See* 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016) (noting that federal judicial review should apply the regulations in effect at the time of the final agency decision but that any amended regulations will be applied if a matter is remanded for further administrative proceedings after the effective date of the amended regulations); *see also Arrieta v. Astrue*, 301 F. App'x 713, 715 n.1 (9th Cir. 2008) (applying listing in effect on date of application). All references herein are to the version of Listing 12.04 in effect at the time of the ALJ's decision.

Preliminarily, the ALJ did not address whether Plaintiff met the paragraph A criteria. (R. 112.) Plaintiff identifies portions of the record that support a finding he met the paragraph A criteria. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 8.) For purposes of review, the undersigned assumes that Plaintiff met the paragraph A criteria for Listing 12.04.

Plaintiff argues that he met the paragraph B criteria because (i) Dr. Moffett's September 2014 Psychiatric Review Technique form states that he meets the paragraph B criteria, and (ii) Plaintiff's testimony that he met the paragraph B criteria is credible. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 8–9.) Thus, Plaintiff's arguments regarding Listing 12.04 are effectively those discussed above in section IV(A). In addition to thoroughly explaining why he assigned minimal weight to Dr. Moffett's September 2014 form, the ALJ explained his reasons—based on other evidence in the record—for finding that Plaintiff did not satisfy the paragraph B criteria.[6] (R. 112–15.)

Plaintiff's only remaining argument is that his testimony regarding Listing 12.04's criteria should be credited. However, to the extent this testimony conflicts with the evidence in the record identified by the ALJ, the undersigned is required to defer to the ALJ's determination. *See Craig*, 76 F.3d at 589. Moreover, the ALJ gave several reasons for not crediting fully Plaintiff's testimony regarding Listing 12.04's criteria[7]: (1) that Plaintiff's reported anxiety issues have been present since childhood

---

[6] Plaintiff does not contend that he met the paragraph C criteria. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 7–9.)

and yet Plaintiff worked for many years; (2) that Plaintiff did not pursue treatment and has been inconsistent with his medication regimen; (3) that treatment records show some improvement despite inconsistent treatment; (4) that the worsening of Plaintiff's symptoms tends to coincide with extrinsic social stress; (5) that Plaintiff's daily living activities include visiting his parents, helping with his father's store, and grocery shopping; and (6) that Plaintiff has inconsistently reported facts about his life to treating and examining sources. (R. 125–26.) This is sufficient explanation to enable meaningful judicial review of the ALJ's credibility determination regarding Plaintiff's mental impairments, and the ALJ's credibility determination is supported by substantial evidence.

In sum, the ALJ adequately explained both his assignment of weight to Dr. Moffett's September 2014 opinions and his determination regarding Plaintiff's credibility as to his mental impairments. There is substantial evidence in the record to support these findings, and the ALJ applied the correct legal standard in determining that Plaintiff does not meet the criteria for Listing 12.04. Accordingly, the undersigned recommends that the court uphold the Commissioner's determination as to this listing.

## C. RFC Assessment

Lastly, Plaintiff contends that the ALJ erred by assessing a "light" exertional level when formulating his RFC. Because the record supports this finding and the

---

[7] The ALJ states that his credibility explanation is made pursuant to SSR 96–7p, 1996 WL 374186 (July 2, 1996). This agency ruling has been superseded by SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016).

ALJ explained his reasoning, the undersigned recommends that the ALJ's determination regarding Plaintiff's RFC be upheld.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7.

In practice, formulating the RFC requires that an ALJ conduct a "function-by-function analysis" of a claimant's work abilities before expressing any conclusions about limits on the RFC. *Mascio v. Colvin*, 780 F.3d 632, 635–36 (4th Cir. 2015); SSR 96–8p, 1996 WL 374184, at *3. This function-by-function analysis requires an ALJ to discuss a Plaintiff's ability to perform work-related actions listed in the regulations. *See Mascio*, 780 F.3d at 636 n.5 (requiring ALJ to complete function-by-function analysis for Supplemental Social Security Income claims by discussing the functions listed in 20 C.F.R. § 416.945(b)–(d)).

Crucially, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). In other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3. As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R § 404.1527(b)–(c); SSR 96–8p, 1996 WL 374184, at *7.

In sum, an ALJ is required to explain his analysis and evaluation when assessing a claimant's RFC because a reviewing court "cannot fill in the blanks for the ALJ." *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017) (reversing and remanding a disability benefits denial because the ALJ failed to document properly application of mental impairment special technique in RFC assessment).

Here, Plaintiff argues that his testimony regarding physical exertional ability, specifically as it pertains to his right shoulder, is consistent with the medical record and necessitates an RFC with a sedentary exertional level. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 12–13.) The ALJ adequately explained his reasons for finding Plaintiff's credibility as to his shoulder less than fully credible. (R. 120, 125.) Furthermore, Plaintiff fails to address the fact that his treating physician, Dr. Robert Martin, "opined that [Plaintiff] had the capacity for performing medium work, which entails lifting and carrying up to 50 pounds occasionally and 25 pounds frequently." (R. 120.) And the ALJ credited the examination findings of Dr. Gwendolyn Riddick, who conducted a state consultative physical exam and opined that Plaintiff

> can be expected to sit, stand and walk normally in an 8-hour workday with normal breaks. [Plaintiff] does not need an assistive device with regards to short and long distances and uneven terrain . . . . There are no limitations on bending, stooping, crouching, squatting and so on and [Plaintiff] will be able to perform these frequently. There are manipulative limitations on the right side only with reaching and [Plaintiff] will be able to perform this occasionally due to a history of right shoulder pain. There are no manipulative limitations on handling, feeling, grasping, fingering and the claimant will be able to perform these frequently.

(R. 118, 491.) The ALJ sufficiently explained his credibility determination, and the opinions of Dr. Martin and Dr. Riddick constitute substantial evidence supporting the ALJ's RFC determination. Therefore, Plaintiff's objection to the RFC should be overruled.

<u>CONCLUSION</u>

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #17] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE #19] be GRANTED, and the Commissioner's decision be upheld.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **June 13, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district

judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 30th day of May 2017.

_____
KIMBERLY A. SWANK
United States Magistrate Judge